820 F.2d 533
 18 Soc.Sec.Rep.Ser. 32, Medicare&Medicaid Gu 36,348
HOSPITAL ASSOCIATION OF RHODE ISLAND, et al., Plaintiffs, Appellees,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.
HOSPITAL ASSOCIATION OF RHODE ISLAND, et al., Plaintiffs, Appellants,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 Nos. 86-1891, 86-1952.
 United States Court of Appeals,
First Circuit.
 Argued April 8, 1987.
Decided June 8, 1987.
 
 Joel W. Nomkin, with whom Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Lincoln C. Almond, U.S. Atty., Providence, R.I., and Anthony J. Steinmeyer, Washington, D.C., were on brief, for Secretary of Health and Human Services.
 Howard E. Walker, with whom Hinckley, Allen, Tobin & Silverstein, Providence, R.I., was on brief, for Hosp. Ass'n of Rhode Island.
 Before COFFIN and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.
 MALETZ, Senior Judge.
 
 
 1
 This action concerns the amount of Medicare reimbursement owed to appellee hospitals, providers of services to Medicare beneficiaries, for the cost of malpractice insurance premiums in cost years 1980 through 1982.[1] The district court found that the 1979 regulation used by the Secretary of Health and Human Services ("Secretary") to calculate that reimbursement was invalid, and awarded relief based on the regulation in effect prior to 1979. The Secretary appeals from that judgment; the hospitals cross-appeal from the dismissal of one count of their complaint. We vacate the judgment and remand to the district court, and dismiss the cross-appeal.
 
 I.
 Background
 
 2
 The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. Sec. 1395, et seq., provides for reimbursement to Medicare providers of the "reasonable cost" of treating Medicare patients. Id. Sec. 1395f(b)(1) (1982). The Secretary issues regulations establishing the methodologies by which the "reasonable cost" will be calculated. Id. Sec. 1395x(v)(1)(A) (Supp. III 1985). In turn, a fiscal intermediary initially determines the amount of reimbursement due, setting forth that amount in a written notice for each cost period. See id. Secs. 1395h(a), 1395g (1982); 42 C.F.R. Sec. 405.1803 (1986).
 
 
 3
 Pursuant to a regulation in effect prior to 1979, a provider was reimbursed for the cost of its general overhead expenses, including malpractice insurance premiums, in proportion to Medicare patients' utilization of the provider's services during the cost year. See 42 C.F.R. Sec. 405.452(b)(1) (1978).[2] Under a regulation promulgated in 1979, however, malpractice insurance costs were no longer considered as part of general overhead expenses, and hospitals were reimbursed for only that proportion of premium costs which corresponded to the malpractice awards paid to Medicare patients during the year. 42 C.F.R. Sec. 405.452(a)(1)(ii) (1985) ("1979 rule").[3] The effect of this new methodology was to reduce the amount of reimbursement made to most hospitals for malpractice insurance costs. See Abington Memorial Hospital v. Heckler, 576 F.Supp. 1081, 1083 (E.D.Pa.1983), aff'd, 750 F.2d 242 (3d Cir.1984), cert. denied, --- U.S. ----, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985).
 
 
 4
 In the present action, the appellee hospitals challenged the amount of their Medicare reimbursement for the cost of malpractice insurance premiums in the cost years 1980-82, and the validity of the 1979 regulation used to compute that amount. On a motion for summary judgment by the Secretary, the district court found the 1979 rule invalid, noting that numerous circuit courts had reached the same conclusion.[4] Specifically, the court determined that the rule was arbitrary and capricious and in conflict with the statutory prohibition against shifting Medicare costs to non-Medicare patients. See 42 U.S.C. Sec. 1395x(v)(1)(A)(i) (Supp. III 1985). It also determined that in promulgating the rule the Secretary failed to comply with the notice and comment requirements of the Administrative Procedure Act. The court entered judgment for the hospitals, and awarded relief based on the methodology in effect prior to promulgation of the 1979 rule, reasoning that prior regulations remain valid until replaced by a valid regulation or invalidated by a court. See Cumberland Medical Center v. Secretary of Health and Human Services, 781 F.2d 536, 538 (6th Cir.1986); Menorah Medical Center v. Heckler, 768 F.2d 292, 297 (8th Cir.1985).
 
 
 5
 Although the district court found for the hospitals on those counts of their complaint pertaining to cost years 1980-82, it dismissed Count IV of the complaint, in which the hospitals had sought relief for cost years 1983-86. Because the hospitals had not obtained final administrative decisions on their claims for those years, the court held that it lacked subject matter jurisdiction. See 42 U.S.C. Sec. 1395oo (f)(1) (Supp. III 1985).
 
 
 6
 In April 1986, a few days after the district court's decision, the Secretary promulgated a new regulation setting forth yet another methodology for reimbursing the cost of malpractice insurance premiums. 51 Fed.Reg. 11,142 (April 1, 1986) (interim final rule); see 52 Fed.Reg. 9833 (March 27, 1987) (confirmation of final rule) ("1986 rule").[5] By its terms, the 1986 rule applies to hospital cost years beginning on or after July 1, 1979, thus including the years here in issue. After promulgation of the 1986 rule, the Secretary moved that the district court strike that portion of its opinion holding that the hospitals should be reimbursed under pre-1979 methodology, and remand the case to the Secretary for computation under the new rule. The motion was denied, following which the court entered a final judgment in conformity with its earlier decision. The Secretary filed this appeal, contending that this court should dismiss for mootness and lack of subject matter jurisdiction, or that, in the alternative, the action should be remanded to the Secretary for recalculation under the new 1986 rule.[6] The hospitals respond that the 1986 rule should not be applied to their claims, on the basis that it is arbitrary and capricious, improperly promulgated, and, in any event, should not be retroactively applied. The hospitals also cross-appeal, seeking reversal of the judgment dismissing Count IV of their complaint.
 
 II.
 1. Mootness
 
 7
 The hospitals, in their complaint, challenged as invalid the 1979 rule, which had been used to calculate the amount of reimbursement due the hospitals for malpractice insurance premium costs. The Secretary maintains that the validity of the 1979 rule was thus the only legal issue raised by the complaint and that since the 1979 rule is now superseded by the 1986 rule, the case is moot.
 
 
 8
 We do not agree. The "matter in controversy" as to which the hospitals sought judicial review, see 42 U.S.C. Sec. 1395oo (f)(1), is not the 1979 rule as such but rather the amount owed as reimbursement of malpractice insurance costs under the Medicare Act, which provides for reimbursement of "reasonable cost." See 42 U.S.C. Secs. 1395f(b), 1395x(v)(1)(A). The hospitals' contention that they are entitled to a specific sum of money, as calculated under the pre-1979 reimbursement rule, remains a live issue and one in which the hospitals have a legally cognizable interest. See Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969) (case is moot where issues no longer "live" or parties lack legally cognizable interest in outcome). "A dispute involving a monetary judgment constitutes a concrete interest in the outcome of the litigation and precludes a finding of mootness based on subsequent events." Bethesda Hospital v. Secretary of Health and Human Services, 810 F.2d 558, 560 (6th Cir.1987) (promulgation of 1986 rule subsequent to lower court decision did not moot action on claim originally determined under 1979 rule); accord Tallahassee Memorial Regional Medical Center v. Bowen, 815 F.2d 1435, 1448 (11th Cir.1987); see Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express & Station Employees, 466 U.S. 435, 442, 104 S.Ct. 1883, 1889, 80 L.Ed.2d 428 (1984) (issue not moot where claim for money damages remained in case); New York Transit Authority v. Beazer, 440 U.S. 568, 580-81, 99 S.Ct. 1355, 1362, 59 L.Ed.2d 587 (1979) (same).[7]
 
 2. Jurisdictional Statute
 
 9
 The Secretary contends that we must dismiss for lack of subject matter jurisdiction under the relevant statute, 42 U.S.C. Sec. 1395oo (f)(1).[8] He argues in particular that the statute's requirement of a "final decision" is not satisfied because the hospitals never received a final decision of the Secretary regarding application of the 1986 rule to their claim for reimbursement.
 
 
 10
 The prerequisites for judicial review of an intermediary's determination on a Medicare Act claim are straightforward. Under section 1395 oo, a provider which has filed a cost report with its fiscal intermediary has a right to a hearing before the Provider Reimbursement Review Board ("Board") if dissatisfied with the intermediary's "final determination" of "the amount of total program reimbursement due." 42 U.S.C. Sec. 1395oo (a)(1)(A)(i) (Supp. III 1985).[9] Following a final decision by the Board,[10] the provider may seek judicial review. Id. Sec. 1395oo (f)(1). In the alternative, the provider may obtain expedited judicial review by first requesting a hearing but then obtaining a determination from the Board that it does not have authority to decide a question of law or regulations "relevant to the matters in controversy." Id. Sec. 1395oo (f)(1).[11] There is a right to judicial review following such a determination. Id. Sec. 1395oo (f)(1); see 42 C.F.R. Sec. 405.1842 (1986).
 
 
 11
 All of these prerequisites to judicial review have been met. The hospitals were dissatisfied with the amount of reimbursement determined to be owing by the intermediary and sought and obtained a determination that the Board was without authority to resolve questions of law relevant to the matters in controversy. Pursuant to the literal language of section 1395oo (f)(1), they then had a right to review, not merely of the question of law or regulation which the Board had certified it could not decide, but of the underlying "action" of the intermediary--in this case, the intermediary's action in awarding less reimbursement for malpractice insurance costs than the hospitals claimed was owing. See 42 U.S.C. Sec. 1395oo (f)(1).[12]
 
 
 12
 The Secretary does not contest that, in light of this procedural history, there was a "final decision" sufficient to provide the district court with jurisdiction at the time this action was commenced, but argues that the statute also requires a final decision regarding application of the 1986 Rule to their malpractice insurance costs. But there is nothing in the language of section 1395oo (f)(1) to indicate that it requires, not only a final decision on a claim, but also a final decision under a regulation that the Secretary now says should have been applied. We conclude that the contentions here concerning the allegedly improper method by which the claims were determined merely raise questions of law "relevant to the matters in controversy" and do not affect jurisdiction. See 42 U.S.C. Sec. 1395oo (f)(1); 5 U.S.C. Sec. 706 (1982).
 
 3. Scope of Review
 
 13
 Having jurisdiction, we consider now the scope of permissible judicial review. That scope of review clearly permits consideration of what regulation should properly be applied to the hospitals' claims, and of whether the 1986 rule, alleged to be applicable, is valid and may be retroactively applied. See Administrative Procedure Act, 5 U.S.C. Sec. 706 (scope of judicial review includes decision of all relevant questions of law to extent necessary to decision and when presented); Abington Memorial Hospital v. Heckler, supra, 750 F.2d at 243 (Sec. 706 applicable to Sec. 1395oo (f)(1) review); see also Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service, Inc., 689 F.2d 1112, 1117 (1st Cir.1982).[13] The Secretary requests that we nonetheless first remand to him for an initial determination of the reimbursement due under the 1986 rule.
 
 
 14
 While we agree that it is the Secretary who must first apply the 1986 rule if that rule is applicable, the initial determination of the validity of the rule involves resolution only of questions of law. See F.P.C. v. Pottsville Broadcasting Co., 309 U.S. 134, 142, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940) (on review, a court may correct errors of law); F.P.C. v. Idaho Power Co., 344 U.S. 17, 20-21, 73 S.Ct. 85, 86-87, 97 L.Ed. 15 (1952). Moreover, resolution of the relevant legal issues would not be aided by initial agency application of the contested regulation. Cf. Bradley v. Weinberger, 483 F.2d 410, 416-17 (1st Cir.1973) (action remanded to agency for, inter alia, consideration of meaning of regulation). Here, it is not disputed that the 1986 rule would be applied to the hospitals' claims, were the action now remanded to the Secretary. In that event, agency reconsideration under that rule is hardly likely to cast light on such relevant legal issues as whether the rule should be retroactively applied, whether it was properly promulgated under the Administrative Procedure Act, and whether it was arbitrary and capricious. This is because the Board lacks authority to consider the questions of law pertaining to the rule's validity and the Secretary would not be able to review the Board's determination that it lacked such authority. See 42 U.S.C. Sec. 1395oo (f)(1); 42 C.F.R. Sec. 405.1867 (1986). Although the prospective futility of administrative proceedings is not a factor that may be considered in determining whether the "nonwaivable" jurisdictional requirements of section 1395oo (f)(1) are met, Rhode Island Hospital v. Califano, 585 F.2d 1153, 1160-62 (1st Cir.1978), it is a proper consideration, when those jurisdictional requirements have been met, in determining whether or not an action should be remanded for further administrative proceedings prior to resolution of questions of law. Cf. City of New York v. Heckler, 742 F.2d 729, 736-37 (2d Cir.1984) (where exhaustion would be futile, exhaustion requirement may be waived by court); Ezratty v. Commonwealth of Puerto Rico, 648 F.2d 770, 774 (1st Cir.1981) (purpose of exhaustion doctrine not served where further agency proceedings would be futile, or where issue is matter of law as to which specialized administrative understanding plays little role).
 
 
 15
 Given all this, we conclude that the validity of the 1986 rule should be determined in this action, prior to a remand to the Secretary.[14] However, "[a]s an appellate court we prefer not to rule on questions of this complexity without a lower court decision and without a more adequate presentation before us." Commonwealth of Massachusetts v. Andrus, 594 F.2d 872, 886 (1st Cir.1979); accord Grazing Fields Farm v. Goldschmidt, 626 F.2d 1068, 1074 (1st Cir.1980). Consequently, we remand to the district court for a determination of the validity of the 1986 rule and of whether or not that rule should be retroactively applied.
 
 4. Count IV
 
 16
 In Count IV of the complaint, the hospitals alleged that under current Medicare Act statutes, the hospitals' reimbursement for cost years 1983-86 will be based in part on the amount of their reimbursable costs for 1982. See 42 U.S.C.A. Sec. 1395ww(b), (d) (West Supp.1987); see generally Charter Medical Corp. v. Bowen, 788 F.2d 728 (11th Cir.1986). As relief, they sought an order requiring the Secretary to compute their reimbursement for 1983-86 in light of any additional reimbursement the court found due for 1982. The district court dismissed Count IV on the ground that it lacked subject matter jurisdiction.
 
 
 17
 An unwaivable jurisdictional requirement under section 1395oo (f)(1) is that a claim have been presented to the Secretary. See Rhode Island Hospital v. Califano, supra, 585 F.2d at 1161 n. 6; cf. Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). This requirement is not met with regard to Count IV. There is nothing in the record to indicate that the hospitals submitted Medicare claims to the Secretary for cost years 1983-86; that they received notices of reimbursement regarding those years from their intermediary; or that they have appealed any determinations of the intermediary to the Board. Indeed, the hospitals are not contending that final administrative decisions have been made on their claims for 1983-86. To the contrary, they assert that they are seeking to avoid future, futile administrative proceedings concerning those years, and subsequent duplicative judicial review, by an order simply directing the Secretary, when he does make final decisions on reimbursement claims for 1983-86, to base those decisions on calculations taking into account the amount of reimbursement found due in this action for the cost year 1982.
 
 
 18
 Even assuming, arguendo, that the hospitals could not, in administrative proceedings, obtain the reimbursement that they contend is due for 1983-86, that would not obviate the need for presentation of their claims to the Secretary. Because the 1983-86 claims have not been presented to the Secretary, Count IV was properly dismissed. See Charter Medical Corp. v. Bowen, 788 F.2d at 732-34 (where 1979 rule held invalid, court erred in ordering recalculation of reimbursement for cost years as to which no final determination by Board); Pacific Coast Medical Enterprises v. Harris, 633 F.2d 123, 138 (9th Cir.1980) (no jurisdiction to review cost year claims not presented to Board); Abington Memorial Hospital v. Heckler, supra, 750 F.2d at 244 (relief limited to claims for reimbursement considered by Board).
 
 
 19
 Judgment vacated and case remanded; cross-appeal dismissed.
 
 
 
 *
 Of the United States Court of International Trade, sitting by designation
 
 
 [1]
 A "cost year" is a twelve month period which, in the case of the appellee hospitals, began on October 1 and ended on September 30 of each year. Such cost reporting periods are identified by the calendar year in which they end, e.g., cost year 1980 ended September 30, 1980
 
 
 [2]
 For example, if Medicare patients constituted 30% of routine patient days at a hospital, Medicare would reimburse the hospital for 30% of the portion of general administrative costs that were allocated to the inpatient routine area. See 52 Fed.Reg. 9834 (March 27, 1987)
 
 
 [3]
 For example, if Medicare patients received 10% of malpractice awards to the provider's patients in a given year, Medicare would reimburse the provider for 10% of its malpractice insurance premiums. If a provider had no malpractice loss experience during a certain period, reimbursement would be based on a national ratio of malpractice losses paid to Medicare patients compared to malpractice losses paid to all patients. See 52 Fed.Reg. 9834 (March 27, 1987)
 
 
 [4]
 See Cumberland Medical Center v. Secretary of Health and Human Services, 781 F.2d 536 (6th Cir.1986); Menorah Medical Center v. Heckler, 768 F.2d 292 (8th Cir.1985); Bedford County Memorial Hospital v. Secretary of Health and Human Services, 769 F.2d 1017 (4th Cir.1985); St. James Hospital v. Heckler, 760 F.2d 1460 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985); DeSoto General Hospital v. Heckler, 766 F.2d 182 (5th Cir.1985); Lloyd Noland Hospital and Clinic v. Heckler, 762 F.2d 1561 (11th Cir.1985); Humana of Aurora, Inc. v. Heckler, 753 F.2d 1579 (10th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); Abington Memorial Hospital v. Heckler, 750 F.2d 242 (3d Cir.1984), cert. denied, --- U.S. ----, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). The Secretary now concedes that the 1979 rule is invalid
 
 
 [5]
 Under the 1986 rule, a provider's malpractice insurance premium costs are divided into two components. The "administrative component," which accounts for 8.5% of total premium cost, is included in the provider's general administrative costs, and is apportioned on the basis of the provider's Medicare utilization rate. See 52 Fed.Reg. 9835 (March 27, 1987). The "risk component," which comprises the remaining 91.5% of total premium cost, is apportioned on the basis of a formula that takes into account the individual provider's Medicare utilization rate as well as the national Medicare malpractice loss ratio and the national Medicare utilization rate. See id
 
 
 [6]
 The Secretary argues also that even if we affirm the district court's judgment that the hospitals are entitled to reimbursement under the methodology used prior to 1979, we should reverse that judgment insofar as it awarded specific monetary damages and remand for recalculation by the Secretary under the pre-1979 methodology. The Secretary explains that, contrary to the apparent understanding of the district court, there has not been a stipulation as to the amounts that would be due were the pre-1979 methodology employed. The hospitals join in the Secretary's request, on the same ground. We conclude that in the event it is ultimately determined that reimbursement should be calculated under the pre-1979 methodology, see discussion infra, the action should be remanded to the Secretary for such recalculation, which is essentially an administrative function. See F.P.C. v. Idaho Power Co., 344 U.S. 17, 20-21, 73 S.Ct. 85, 86-87, 97 L.Ed. 15 (1952) (function of reviewing court ends when an error of law is laid bare, and matter once more goes to agency for reconsideration)
 
 
 [7]
 The cases cited by the Secretary to support the claim of mootness are readily distinguishable. In those cases, unchallenged superseding regulations had cured alleged defects in prior, challenged, regulations and monetary relief was not in issue. See, e.g., Natural Resources Defense Council, Inc. v. N.R.C., 680 F.2d 810 (D.C.Cir.1982); Sannon v. United States, 631 F.2d 1247 (5th Cir.1980); Associated Third Class Mail Users v. United States Postal Service, 662 F.2d 767 (D.C.Cir.1980); Relf v. Weinberger, 565 F.2d 722 (D.C.Cir.1977)
 
 
 [8]
 Section 1395oo (f)(1) provides:
 .... Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary.... Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines ... that it is without authority to decide the question.... If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy.... The Board shall render such determination in writing ... and the determination shall be considered a final decision and not subject to review by the Secretary....
 Federal question jurisdiction, 28 U.S.C. Sec. 1331 (1982), is barred by section 205 of the Social Security Act, 42 U.S.C. Sec. 405(h) (Supp. III 1985), which is made applicable to the Medicare Act by 42 U.S.C. Sec. 1395ii (Supp. III 1985). See Rhode Island Hospital v. Califano, 585 F.2d 1153, 1157 (1st Cir.1978).
 
 
 [9]
 Among other requirements set forth in section 1395oo for review by the Board is that the amount in controversy, in the case of group appeals, be over $50,000. 42 U.S.C. Sec. 1395oo (b) (1982). The Secretary argues that as a result of promulgation of the 1986 rule we lack jurisdiction because the amount in controversy may be less when the methodology of the 1986 rule is applied than it was when the methodology of the 1979 rule was used. The argument is without merit because it is not disputed that the amount-in-controversy requirement was met at the time the action was commenced. See 14A Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3702, at 28-29 (2d ed. 1985) (amount in controversy is determined as of date of commencement of action in federal court)
 
 
 [10]
 Or by the Secretary, in the event the Secretary reverses, modifies or affirms the Board's decision. 42 U.S.C. Sec. 1395oo (f)(1)
 
 
 [11]
 The provider may request the determination or the Board may make such a determination on its own motion. 42 U.S.C. Sec. 1395oo (f)(1). The determination is a "final decision" and not subject to review by the Secretary. Id
 
 
 [12]
 Section 1395oo (f)(1) specifies that:
 .... Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines ... that it is without authority to decide the question.... (emphasis added).
 
 
 [13]
 In finding that the scope of review includes the issue of the validity of the 1986 rule, we concur with the Sixth Circuit, which on essentially identical facts determined that it had jurisdiction to address the validity of the rule's retroactive application. See Mason General Hospital v. Secretary of Health and Human Services, 809 F.2d 1220 (6th Cir.1987) (finding retroactive application invalid); Tallahassee Memorial Regional Medical Center v. Bowen, 815 F.2d at 1453 (same). We differ, however, with the conclusion on similar facts of the Seventh Circuit, in Appleton Memorial Hospital v. Bowen, 814 F.2d 408 (7th Cir.1987). In Appleton, the court remanded to the Secretary for reconsideration under the 1986 Rule. The court held that it lacked jurisdiction to review the validity of the rule on the ground that the attack on the rule's retroactive application "constitutes an attack upon the regulation itself ... as such, statutory prerequisites mandate that we remand this case before judicial review." Id. at 410. We find this reasoning unpersuasive, first, in view of our previous analysis and, second, because the cases relied upon by the court are ones in which the plaintiffs had failed to pursue administrative remedies, so that the questions raised in those cases were not questions of law that were relevant to review of properly presented claims. See, e.g., Hadley Memorial Hospital, Inc. v. Schweiker, 689 F.2d 905 (10th Cir.1982); Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070 (D.C.Cir.1978)
 
 
 [14]
 Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), cited by the Secretary, does not compel a contrary conclusion. In that case, Social Security claimants sought additional procedural rights in the context of determinations suspending or terminating disability benefits. During the course of judicial review, they became entitled to additional procedural benefits by virtue of newly promulgated regulations. The Supreme Court remanded for reconsideration of the claims under the new regulations before addressing remaining constitutional issues, noting that agency reconsideration could result in the claimants being awarded the relief sought, namely, continued eligibility for benefits. By contrast, the new 1986 rule does not grant additional rights to the hospitals. Rather, it sets forth a new methodology designed to provide less reimbursement than would have been available under the only valid prior methodology, i.e., that contained in the pre-1979 regulation