**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROVIDENCE YAKIMA MEDICAL
CENTER, a Washington non-profit
corporation; ST. VINCENT HOSPITAL,
a Montana non-profit corporation;
YAKIMA VALLEY MEMORIAL
HOSPITAL, a Washington non-profit
corporation; MERLE WEST MEDICAL
CENTER, an Oregon non-profit
corporation; DEACONESS-BILLINGS
CLINIC HEALTH SYSTEM, a Montana
non-profit corporation,
        *Plaintiffs-Appellees-*
        *Cross-Appellants,*

      v.

KATHLEEN SEBELIUS,* Secretary,
United States Department of
Health and Human Services,
        *Defendant-Appellant-*
        *Cross-Appellee.*

Nos. 09-35266 and
09-35402

D.C. No.
2:03-cv-03096-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, District Judge, Presiding

Argued and Submitted
April 6, 2010—Seattle, Washington

Filed July 23, 2010

*Kathleen Sebelius is substituted for her predecessor, Charles E. John-son, as Secretary of Health and Human Services. Fed. R. App. P. 43(c)(2).

10591

Before: Michael Daly Hawkins, Carlos F. Lucero,** and
N. Randy Smith, Circuit Judges.

Per Curiam Opinion

---

**Honorable Carlos F. Lucero, United States Circuit Judge for the Tenth Circuit, sitting by designation.

---

**COUNSEL**

Sanford E. Pitler, Bennett, Bigelow & Leedom, P.S., Seattle, Washington, for the plaintiffs-appellees-cross-appellants.

Jeffrey A. Clair, Civil Division, United States Department of Justice, Washington, D.C., for the defendant-appellant-cross-appellee.

---

**OPINION**

PER CURIAM:

Secretary of the Department of Health and Human Services Kathleen Sebelius ("the Secretary") appeals the adverse summary judgment grant in an action brought by five not-for-profit hospitals ("Hospitals"), each recipients of Medicare direct graduate medical education ("DGME") payments for approved family medicine residency programs. The district court found the Secretary's methodology for calculating the

Hospitals' base-year per resident amounts ("PRAs") under the existing regulation 42 C.F.R. § 413.86(e)(4)(I) (1989) ("1989 regulation"), known as Sequential Geographic Methodology ("SGM"), arbitrary and capricious. On appeal, the Secretary argues the agency's Provider Review Reimbursement Board ("PRRB") improperly granted expedited judicial review ("EJR") to the Hospitals' challenge to SGM. The Hospitals cross appeal, challenging, among other determinations, the district court's failure to find the 1989 regulation both substantively and procedurally invalid on its face.

Finding a lack of subject matter jurisdiction based on the PRRB's incorrect granting of EJR, we vacate the district court's invalidation of SGM, and remand to the district court with instructions to dismiss the Hospitals' challenge and further remand to the agency for it to determine the validity of the methodology. We affirm the district court's determination as to the validity of the 1989 regulation.

## I.    BACKGROUND

### A.    Factual Background

The Hospitals operate residency training programs in rural family medicine, and include Yakima Medical Center and Yakima Valley Memorial Hospital ("Yakima Medical"), located in Yakima Valley, Washington, St. Vincent Hospital and Deaconess-Billings Clinic Health System ("St. Vincent"), located in Billings, Montana, and Merle West Medical Center ("Merle West"), located in Klamath Falls, Oregon. The five Hospitals were recipients of Medicare DGME payments, which are based on a hospital-specific PRA and calculated according to several formulas. These formulas included the 1989 regulation and SGM.

The 1989 regulation based the PRA for the new graduate medical education programs on "the lower of the following: (A) The hospital's actual costs . . . (B) The mean value of per

resident amounts of hospitals located in the same geographic wage area."[1] 54 Fed. Reg. 40286, 40317 (Sept. 29, 1989). In areas with "fewer than three amounts in the wage area, . . . the intermediary [was required to] write HCFA [Health Care Financing Administration][2] Central Office for a determination of the per resident amount to use." 54 Fed. Reg. at 40291.

HCFA described SGM in a June 1997 letter to the reimbursement manager of Blue Cross of Montana. The methodology was used in the mid-1990s by HCFA to calculate the PRAs for hospitals with "fewer than three amounts in the wage area." *See* 54 Fed. Reg. at 40291. In its letter, HCFA noted:

> If there are at least three hospitals in the same geographic wage area, we determine the base year per resident amount based on a weighted average of the per resident amounts in the same geographic wage area. If there are less than three teaching hospitals in the same geographic wage area, we include all hospitals in contiguous wage areas. If we continue to have fewer than three hospitals for this calculation, we use a statewide average. In the case of St. Vincent's and Deaconess, there are fewer than three hospitals with teaching programs in the entire state so

---

[1] The term "same geographic wage area" refers to an urban area ("a metropolitan statistical area" ("MSA") as defined by the Office of Management and Budget, certain urban areas specified by the Social Security Amendments) or rural area (any area outside an urban area), 42 C.F.R. § 412.62(f), in the hospital-specific wage index as calculated by the Secretary. 42 C.F.R. § 412.63(w).

[2] The Health Care Financing Administration is a division of HHS that administers Medicare payments. HCFA was renamed Centers for Medicare and Medicaid Services ("CMS") in 2001. *See* Press Release, U.S. Dept. of Health & Human Services, The New Centers for Medicare & Medicaid Services (CMS) (June 14, 2001) (available at http://www.hhs.gov/news/press/2001pres/20010614a.html). We use CMS and HCFA interchangeably throughout this Opinion.

> we calculated a weighted average among all hospitals with teaching programs in contiguous states.

However, in its final rule, issued in 1997, the Secretary ultimately declined to adopt SGM as its methodology, relying instead on the "regional weighted average per resident amounts determined for each of the nine census regions established by the Bureau of Census for statistical and reporting purposes" for areas with fewer than three hospitals in a given geographic wage area. 62 Fed. Reg. 45966, 46004 (Aug. 29, 1997).

Here, the Secretary calculated the Hospitals' PRAs via SGM, based on the weighted average of PRAs of teaching hospitals in each state (for Merle West, Yakima Medical, the PRAs of Oregon and Washington, respectively), or the weighted average of PRAs of teaching hospitals in contiguous states (St. Vincent). The Hospitals appealed these PRA determinations to the PRRB, contending their allowed Medicare DGME costs exceeded these determinations.

## B.   Procedural Background

The Hospitals' district court action challenged both the Secretary's 1989 regulation and "its prior ad-hoc methodology," or SGM, as "inconsistent with the plain and unambiguous wording of the governing Medicare statute, inconsistent with clear congressional intent, patently unreasonable, arbitrary and capricious, and otherwise contrary to law."

In 2005, the PRRB, which had granted EJR as to the validity of the Secretary's 1989 regulation, granted EJR "over the issue of whether 42 C.F.R. § 413.86(e)(4)(I) [(1989 regulation)], as applied by the Intermediaries [(via SGM)] to each of the Providers in this appeal, violates 42 U.S.C. § 1395ww(h)(2)(F)." EJR permits a party to seek judicial review in federal court, without the issuance of a final decision of the PRRB, of an action "which involves a question of

law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question." 42 U.S.C. § 1395oo(f)(1).

In 2007, the court granted summary judgment in favor of the Hospitals, and found SGM lacked the force of law and that under the appropriate *Skidmore* level of deference,[3] SGM is arbitrary and capricious. In the same order, the court accorded the 1989 regulation *Chevron* deference,[4] upheld the regulation, and declined to find the regulation arbitrary and capricious. The court then ordered the Secretary in 2008 to "calculate a weighted average PRA based on Plaintiffs' Medicare-allowable base-year costs, and set each Plaintiff's PRA at the lesser of: (a) Each Plaintiff's actual average cost per resident; or (b) The average weighted cost per resident of the five Plaintiffs." The order required the Secretary to submit the new figures to the court and allowed the court to retain jurisdiction over the matter. The Secretary ultimately submitted those calculations, and the court awarded these amounts and entered judgment for the Hospitals.

The Secretary filed a timely notice of appeal challenging the subject matter jurisdiction of the district court under the 2005 EJR, the court's reversal of the PRRB's determination,

---

[3]*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Skidmore* deference requires that "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*; *see also Gonzales v. Oregon*, 546 U.S. 243, 268-69 (2006).

[4]*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *Chevron*'s two-part analysis requires the court to ask, first, "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If Congressional intent is clear, the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. However, if the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*; *see also Edwards v. McMahon*, 834 F.2d 796, 799 (9th Cir. 1987).

via SGM, of the DGME amounts due to the Hospitals, and the court's limitation of the Secretary's discretion to reaudit the Hospitals' base DGME costs.

The Hospitals filed a timely cross appeal challenging the court's failure to invalidate SGM on procedural grounds, failure to find the 1989 regulation substantively and procedurally invalid on its face, failure to specify, in the alternative, that its remedy was based on the 1989 regulation itself, and the exclusion of evidence of the Secretary's comparable programs under Fed. R. Evid. 408.

## II.   STANDARD OF REVIEW

We review de novo both the district court's subject matter jurisdiction and the district court's grant of summary judgment. *See Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002) (subject matter jurisdiction); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1064 (9th Cir. 2002) (grant of summary judgment), *cert. denied*, 123 S. Ct. 1573 (2003) (same). Our review is not of the Secretary's/PRRB's reimbursement determination itself, but the district court's determinations.

## III.   DISCUSSION

### A.   2005 EJR Grant

The Secretary challenges the district court's jurisdiction, contending because reimbursement determinations under SGM "do not turn on a question of law or regulation that the PRRB cannot review, . . . they consequently are not amenable to expedited judicial review" under 42 U.S.C. § 1395oo(f)(1). Because SGM is an "ad hoc" methodology and does not meet the requirements of § 1395oo(f)(1), we agree that the PRRB's 2005 grant of EJR was in error, and the district court should not have determined it had jurisdiction.

### 1. PRRB's decision

**[1]** Section 1395oo(f) gives providers the right to obtain judicial review of any action of the fiscal intermediary involving a question of law or regulations whenever the Board determines that it is without authority to decide the question. *See Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406 (1988) ("Subsection (f)(1) grants providers the right to obtain judicial review of an action of the fiscal intermediary, but the predicate is that the Board must first make a determination that it is without authority to decide the matter because the provider's claim involves a question of law or regulations.").[5]

**[2]** The PRRB granted EJR for SGM in its 2005 proceeding "over the issue of whether [the 1989 regulation], as applied by the Intermediaries to each of the Providers in this appeal, violates 42 U.S.C. § 1395ww(h)(2)(F) by failing to base the Providers' average per-resident amounts on the 'approved [full-time equivalent] resident amounts of comparable residency programs." The PRRB found jurisdiction to address the issue in a hearing,[6] and then "conclude[d] it lack-[ed] the authority to grant relief sought by the Providers[,] using the Providers' audited, Medicare allowable costs as the basis for PRAs" because the remedy was not prescribed by the 1989 regulation. It also stated it was unable to invalidate "a method of reimbursement that is solely within the discretion of the Secretary to administer, as is the case here." Here, we evaluate the PRRB's determination that it lacked the authority to review SGM. If, as the Secretary contends, the PRRB had the authority to decide the question of SGM's validity, then its grant of EJR was incorrect, and the district court lacked subject matter jurisdiction to evaluate SGM's validity.

---

[5]The EJR statute also has an amount in controversy requirement, which is not disputed here as having been met. *See* § 1395oo(f)(2).

[6]Neither party here challenges the PRRB's determination that it had jurisdiction to conduct the hearing.

**[3]** The PRRB reviewed the decision of a fiscal intermediary—CMS—as to the PRA for each hospital, which was used to calculate the DGME funds. Per the statute, the hospital had the "right to obtain judicial review of any action of the fiscal intermediary"—here, the PRA determination by the CMS using SGM—"which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question." § 1395oo(f)(1). Our task is to determine whether SGM is a "question of law or regulations relevant to the matters in controversy." *See id.*

## 2. Ad hoc policy or regulation

The Secretary argues that SGM was an "ad hoc" policy and not a regulation under the statute. We agree.[7] The district

---

[7]Anticipating the argument that the PRRB's lack-of-authority determination under § 1395oo(f) is not subject to review by the federal courts, our review evaluates the PRRB's lack-of-authority determination, as distinct from its jurisdictional determination. While the authority of the federal courts to review the final decision of the PRRB that it lacks *jurisdiction* has been subject to much debate in the courts, *see Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1130-32 (7th Cir. 1988), there has not been much debate surrounding the PRRB's determination that it lacks the *authority* to address an issue. *See id.* at 1130 ("As a consequence, jurisdiction over the Board's determination that it does not have authority is clear.") (citing *Hosp. Ass'n of R.I. v. Sec'y of Health & Human Servs.*, 820 F.2d 533, 537 (1st Cir. 1987)). The Seventh Circuit, the only circuit to address the issue directly, has stated, "the statute itself establishes a right to judicial review of the Board's determination that it lacks the authority to decide a question of law or regulations by designating that determination a 'final decision.' " *Bowen*, 857 F.2d at 1130. The First Circuit has not addressed the jurisdiction of the federal courts over the Board's lack-of-authority determination; rather, it addressed whether the Board is required to consider a particular regulation or policy itself before granting EJR. *See Hosp. Ass'n of R.I.*, 820 F.2d at 537-38. The First Circuit merely concluded that the PRRB's grant of EJR creates a right to judicial review, and did not address the propriety of, or challenges to, the Board's lack of authority determination. *See id.* In fact, the Seventh Circuit's citation of *Hospital Association of R.I.* suggests that the First Circuit case supports the federal courts' review of the PRRB's lack-of-authority determination. *See Edgewater Hosp.*, at 1130.

court lacked jurisdiction to review SGM because SGM was not a regulation; no rule was promulgated as this was a case-by-case adjudication, and did not involve rulemaking of any kind.

**[4]** We distinguish rulemaking from adjudication:

> A rule is: The whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency. . . . An adjudication (which results in an order) is virtually any agency action that is not rulemaking. 5 U.S.C. § 551(6)-(7). Two principal characteristics distinguish rulemaking from adjudication. First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied.

*Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) (internal citations omitted) (alterations in original). A regulation is defined as a "rule or order, having legal force, usually issued by an administrative agency." *See Black's Law Dictionary* (8th ed. 2004). Here, SGM was promulgated not through notice and comment rulemaking, formal adjudication, or formal rulemaking, but rather came in a letter to the Hospitals, which stated it would be applied on a case-by-case basis. SGM likewise "did not affect the rights of a 'broad class' of people, and so no notice and comment was required," as it was not rulemaking. *See MacLean v. Dep't of Homeland Security*, 543 F.3d 1145, 1152 (9th Cir. 2008). It

was applied to "specific individuals in specific cases," namely each of the Hospitals, and involved the "concrete dispute[ ]" of the calculation of a PRA for hospitals with less than three comparable hospitals in the area. *See Yesler Terrace*, 37 F.3d at 448.

The effect was immediate; once the Hospitals received the letter, they knew their PRA and therefore their subsequent DGME reimbursement. *See id.*; *see also RLC Indus. Co. v. Commissioner*, 58 F.3d 413, 417 (9th Cir. 1995) ("Rulemaking, the quasi-legislative power, is intended to add substance to the Acts of Congress, to complete absent but necessary details . . . Adjudication, the quasi-judicial power, is intended to provide for the enforcement of agency . . . regulations on a case-by-case basis.") (citations omitted); *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1540 (9th Cir. 1993) ("Where an agency's task is to adjudicate disputed facts in particular cases, an administrative determination is quasi-judicial. By contrast, rulemaking concerns policy judgments to be applied generally in cases that may arise in the future.") (citations omitted).

**[5]** "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all . . . lack the force of law" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). The PRRB, therefore, had the authority to decide the question at issue because it did not involve a question of law or regulations. *See* § 1395oo(f)(1). The Board incorrectly determined that it lacked authority to decide the issue, and, as a result, incorrectly granted EJR. Therefore, the district court lacked jurisdiction over the validity of SGM. We vacate the district court's invalidation of SGM, and remand to the district court with instructions to dismiss the Hospitals' challenge and further remand to the agency for it to determine the validity of the methodology.[8]

---

[8]Because we find the district court lacked subject matter jurisdiction, and remand to the agency to consider the validity of SGM, we do not

## B.   The 1989 Regulation

The remaining issue before us, from the Hospitals' cross appeal, is whether the district court erred in concluding the 1989 regulation was both substantively and procedurally valid on its face. The Hospitals argue the district court erred in failing to invalidate, under *Chevron*, 467 U.S. at 842-43, the portion of the 1989 regulation applicable to hospitals in geographic wage areas with less than three teaching hospitals, because the regulation deviated from the mandate of 42 U.S.C. § 1395ww(h)(2) by "impermissibly differentiat[ing] a subset of new teaching programs from all others."[9] They also argue the 1989 regulation was arbitrary and capricious under 5 U.S.C. § 706(2)(A) due to the Secretary's failure to provide notice of or rationale of the methodology to be applied by the HCFA with respect to Hospitals in a geographic wage area with less than three hospitals.

The district court did not err in upholding the validity of the regulation under *Chevron*, nor did it err in declining to find the 1989 regulation arbitrary and capricious.[10]

### 1.   *Chevron* step one

[6] We ask first "whether Congress has directly spoken to

---

address the Hospitals' appeal of the district court's exclusion of evidence of comparable programs in its remedy determination following its invalidation of SGM, and the Hospitals' challenge to the district court's failure to specify that its remedy was based on the 1989 regulation itself.

[9]The Hospitals do not otherwise challenge the substance of the 1989 regulation.

[10]The district court's reasoning for declining to reach the § 706(2)(A) analysis was, however, incorrect. The replacement of the 1989 regulation by the 1997 regulation did not render the Hospitals' claim moot. Despite the replacement regulation, the Hospitals suffered losses to their allotted DGME payments under the calculation of their PRAs during the 1990s under the carveout provision of the 1989 regulation.

the precise question at issue." *Chevron*, 467 U.S. at 842. Here, the statute is ambiguous with respect to the Secretary's responsibility of establishing PRAs for post-1984 DGME programs. The plain language of the statute is based in the ambiguous term "comparable programs": "the Secretary shall . . . provide for such approved FTE [full-time equivalent] resident amounts as the Secretary determines to be appropriate, based on approved FTE resident amounts for comparable programs." 42 U.S.C. § 1395ww(h)(2). Congress, however, provided no criteria to determine program compatibility.

The Hospitals cite to the Federal Register, and the Secretary's "inten[t] to establish reasonable base-year DGME costs in a manner that would not disadvantage new programs." However, in that same text of the regulation, the Secretary also notes, "If there are fewer than three amounts in the wage area, we are proposing that the intermediary write HCFA Central Office for a determination of the per resident amount to use. The per resident amount used for the first year would be updated *in future years without regard to actual costs*." 53 Fed. Reg. at 36595 (emphasis added). Simply indicating that the Secretary did not want hospitals to be disadvantaged is not an indication of the meaning of "comparable," and certainly does not preclude this portion of the 1989 regulation, particularly when the Secretary notes that updates in future years will be without regard to actual costs.

The Hospitals also contend the "comparable programs" requirement is rendered superfluous by the portion of the Secretary's regulation here, and that the Secretary's interpretation "adds new language to the statute not contained therein," thereby creating two different classes of new teaching programs. Nothing in the statute, however, attempts to define "comparable programs," or exclude any possible definitions; the regulation merely defines what is ambiguous within the statute.

### 2.   *Chevron* **step two**

**[7]** Under *Chevron* step two, if congressional intent is ambiguous, a reviewing court must defer to the agency's interpretation of the statute unless it is "contrary to clear congressional intent or frustrates the policy Congress sought to implement." *Schneider v. Chertoff*, 450 F.3d 944, 960 (9th Cir. 2006). The Hospitals argue nothing in the statute implies the Secretary may treat hospitals in wage areas with less than three teaching hospitals different from all other new programs. However, nowhere does the statute itself forbid the Secretary from making such an exception. The district court correctly noted that "[g]iven the absence of clear congressional intent to the contrary, it was permissible for the Secretary to provide for the exceptional situation presented by hospitals with new GME programs located in areas where a meaningful average could not be calculated." Therefore, the challenged regulation was correctly deemed valid and accorded *Chevron* deference.

### 3.   **Arbitrary and capricious challenge**

The 1989 regulation was promulgated via informal rulemaking under 5 U.S.C. § 553, and such action may be set aside if found "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983). An arbitrary and capricious challenge requires us to adhere to a narrow scope of review, wherein we are "not to substitute [our] judgment for that of the agency." *State Farm*, 463 U.S. at 43. The agency, however, is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made," *id.* (internal quotation marks and citation omitted), and we in turn must review that explanation, considering "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error

of judgment." *Id.* (internal quotation marks and citation omitted). A rule is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

In our analysis of whether an agency's action was arbitrary or capricious, we are required to be "highly deferential, presuming the agency action to be valid." *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051 (9th Cir. 2007) (citing *Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 830-31 (9th Cir. 2002)). "Where [an] agency's line-drawing does not appear irrational and the party challenging the agency action has not shown that the consequences of the line-drawing are in any respect dire, courts will leave that line-drawing to the agency's discretion." *Id.* at 1052 (citing *Leather Indus. of Am. v. EPA*, 40 F.3d 392, 409 (D.C. Cir. 1994) (internal modifications and quotation marks omitted)). And while an agency should provide a reasoned basis for its actions, *State Farm*, 463 U.S. at 43, we "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (citing *State Farm*, 463 U.S. at 43) (internal modifications and quotation marks omitted).

**[8]** The Hospitals argue the 1989 regulation was arbitrary and capricious, first because the Secretary did not articulate any justification for treating a subset of new teaching programs differently from all others when she permitted HCFA to make the PRA determination of hospitals with fewer than three hospitals in a given wage area. The Secretary's assumption in creating this "carveout" exception appears to be that the resulting mean value of PRAs for hospitals with less than three hospitals in a given wage area is inaccurate. On its face, the assumption does not appear unreasonable or arbitrary; cal-

culating a mean from a larger pool results in a more accurate number than an average of two numbers (two hospitals in a given wage area) or the reliance on one number alone. And while the failure to provide an explanation for the choice of the carveout is troubling, *see State Farm*, 463 U.S. at 50-51, it does not appear to rise to the level of "rel[ying] on factors which Congress has not intended it to consider, entirely fail-[ing] to consider an important aspect of the problem, offer-[ing] an explanation for its decision that runs counter to the evidence before the agency, or [being] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See State Farm*, 463 U.S. at 43; *cf. id.* at 46 (rescission of a regulatory provision by NHSTA arbitrary and capricious where the agency "gave *no consideration whatever* to modifying the standard" to require the use of air-bag technology) (emphasis added); *see also J & G Sales Ltd.*, 473 F.3d at 1052 (agency's demand letter with reliance on absolute number of firearms traces was not arbitrary and capricious because "[t]he agency need not craft the perfect threshold in order to survive review, but merely demonstrate that its threshold stems from reasoned decision making . . . [which] the agency has done"). The carveout provision does not appear to be a product of irrational line-drawing, and the Hospitals, while they have shown a loss of funds from the provision, have not "shown that the consequences of the line-drawing are in any respect dire." *See J & G Sales Ltd.,* 473 F.3d at 1052 (internal quotation marks and citation omitted).

**[9]** Alternatively, according to the Hospitals, the 1989 regulation was arbitrary and capricious because the Secretary "failed to consider key aspects of the issue, or to provide a plausible explanation for this decision" when she did not modify the final rule based on comments she received, and did not explain how criteria reported in the rule "would ensure that PRAs were set based on reasonable costs and truly comparable programs." However, the comments cited by the Hospitals do not address the perceived inappropriateness of treating hospitals with less than three in a wage area differ-

ently from other hospitals. The district court, therefore, did not err in failing to find the 1989 regulation arbitrary and capricious.

## IV.   CONCLUSION

The district court lacked subject matter jurisdiction to consider the validity of SGM. We vacate the district court's invalidation of SGM, and remand to the district court with instructions to dismiss the Hospitals' challenge and further remand to the agency for it to determine the validity of the methodology. We affirm the district court's determination that the 1989 regulation was substantively and procedurally valid.

**VACATED AND REMANDED IN PART; AFFIRMED IN PART.** Each party shall bear its own costs on appeal.