**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HOSPICE OF NEW MEXICO, LLC, a
New Mexico corporation,

      Plaintiff-Appellee/Cross-Appellant,

v.

KATHLEEN SEBELIUS, Secretary of the
United States Department of Health and
Human Services,

      Defendant-Appellant/Cross-
Appellee.

Nos. 10-2136 & 10-2168
(D. N.M.)
(D.C. No. 1:09-CV-00145-RB-LFG)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

The district court decided 42 C.F.R. § 418.309(b), the United States Department of

Health and Human Services' (HHS) regulation implementing an annual cap on payments

to hospice providers, is contrary to the plain language in 42 U.S.C. § 1395f(i)(2)(A) and

remanded the case to HHS for it to recalculate payment obligations in a manner

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

compatible with the statute. The HHS appealed from its decision. Hospice of New Mexico (Hospice), a hospice care provider, cross-appealed from the district court's remand to HHS, claiming the proper relief was the return, with interest, of all repayments it made to HHS pursuant to unlawful demands. While these appeals were pending, the Fifth and Ninth Circuits, like the district court, determined 42 C.F.R. § 418.309(b) is not faithful to 42 U.S.C. § 1395f(i)(2)(A)'s requirement that a hospice care provider's annual cap "reflect the proportion of hospice care that [its hospice patients were] provided in a previous or subsequent accounting year . . . ." *See Lion Health Servs., Inc., v. Sebelius*, 635 F.3d 693 (5th Cir. 2011); *Los Angeles Haven Hospice, Inc. v. Sebelius*, No. 09-56391, -- F.3d -- (9th Cir. Mar. 15, 2011). HHS has thrown in the towel and now moves to withdraw its appeal and all other appeals pending in this Court on that issue. Hospice, on the other hand, wants its cross-appeal decided. We GRANT HHS's motion to withdraw its appeal (10-2136) and AFFIRM the district court's remand.

## I.     BACKGROUND

In 1982, Congress expanded the Medicare Act to include hospice care for terminally ill beneficiaries. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97-248, § 122, 96 Stat. 356, 364. To classify as "terminally ill," an individual's "attending physician" and the hospice medical director must certify the individual's life expectancy is six months or less. *See* 42 U.S.C. §§ 1395f(a)(7), 1395x(dd)(3)(A). As long as the terminally ill status is certified, the Medicare Act allows the individual to receive hospice care.

Hospice care providers, however, are subject to a statutory cap on the payments

they may receive from Medicare in a fiscal year, which begins on November 1 and ends

on October 31. 42 U.S.C. § 1395f(i)(2) provides:

> (A) The amount of payment made under this part for hospice care provided by (or under arrangements made by) a hospice program for an accounting year may not exceed the "cap amount" for the year (computed under subparagraph (B)[1]) multiplied by the number of medicare beneficiaries in the hospice program in that year (determined under subparagraph (C)).
>
> . . . .
>
> (C) For purposes of subparagraph (A), the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, *such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year* or under a plan of care established by another hospice program.

42 U.S.C. § 1395f(i)(2) (emphasis added). In contrast, the implementing regulation, 42

C.F.R. § 418.309 states in relevant part:

> For purposes of [the cap amount] calculation, the number of Medicare beneficiaries includes-
>
> (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period) . . . .

42 C.F.R. § 418.309(b). As a result, even though a patient's hospice care may span more

than one fiscal year and the statute requires in those instances that the patient's care be

---

[1] The statute requires an annual recalculation of the individual patient "cap amount" based on changes in the Consumer Price Index. *See* 42 U.S.C. § 1395f(i)(2)(B).

proportioned in determining the annual cap, the regulation allocates the entire cap amount to a single fiscal year based upon the date on which the patient elects hospice care.  The sole benefit of this approach is administrative convenience.

Throughout the year, Medicare payments are calculated and paid by a Medicare contractor, a fiscal "intermediary," upon submission by the hospice care provider.  *See* 42 U.S.C. §§ 1395g(a) & (g)(e)(3); *see also* 42 C.F.R. §§ 413.64(b), 418.302(d)-(e).  At the close of each fiscal year, the intermediary calculates the hospice care provider's aggregate cap amount for that fiscal year.  *See* 42 C.F.R. § 418.308(c).  If the provider's total reimbursement payments do not exceed its fiscal cap, the provider owes nothing.  However, if the total reimbursements for that fiscal year exceed the statutory cap, the intermediary sends the provider a demand for reimbursement of the amount in excess of the aggregate cap.  *See* 42 C.F.R. § 418.308(d).

Hospice is a Medicare-certified hospice care provider.  In April 2008, a fiscal intermediary, applying the formula outlined in 42 C.F.R. § 418.309, sent Hospice a letter stating it had exceeded its 2006 fiscal cap by $793,934.00.  Hospice reimbursed Medicare as required but filed an administrative appeal challenging 42 C.F.R. § 418.309 as contrary to the terms of 42 U.S.C. § 1395f(i)(2)(A).  In May 2009, while the initial action was pending, Hospice received a notice stating it had exceeded the annual cap for fiscal year 2007 by $1,010,593.00.  Because that figure was also determined under 42 C.F.R. § 418.309, Hospice made partial payment and again appealed.

A challenge to an intermediary's demand for reimbursement over $10,000.00 begins by filing a claim with the Provider Reimbursement Review Board (the "PRRB").

*See* 42 U.S.C. § 1395oo(a). But because the PRRB lacks the authority to declare HHS regulations invalid, *see Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406 (1988), the PRRB authorized Hospice to proceed with judicial review in federal district court; such review is governed by the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (the "APA"). *See id.* § 1395oo(f)(1); 42 C.F.R. § 405.1842.

After filing its claim in the district court, Hospice moved for summary judgment arguing 42 U.S.C. § 1395f(i)(2) required HHS to calculate the annual cap using a proportional method allocating patients by a strict mathematical formula and therefore 42 C.F.R. § 418.309, which allows a one-time allocation, was contrary to the statute. The district court agreed. *Hospice of New Mexico* v. *Sebelius*, 691 F. Supp. 2d 1275, 1292 (D.N.M. 2010) (concluding the regulation introduced a calculation method which did not reflect proportionality). Accordingly, the court granted Hospice summary judgment and remanded to HHS for a recalculation of Hospice's liability in accordance with the statute with instruction to repay Hospice any overpayment plus interest resulting from the new calculation. *Id*. at 1282, 1287, 1293, 1295.

The court denied Hospice's request for an order directing HHS to return all monies Hospice paid to HHS for the years 2006 and 2007 with interest, writing:

> Granting [Hospice's] request for monetary relief would be extremely difficult for this Court and likely require extensive fact-finding and hearings. The Court has no information before it indicating that Hospice is entitled to a return of all, or any, of the payments it made to HHS for fiscal years 2006 and 2007. Even using a fractional method of calculation to determine [Hospice's] statutory reimbursement cap, it is possible that [Hospice] exceeded its cap for fiscal years 2006 and 2007 and HHS is entitled to a repayment of some of the Medicare benefits it paid out to Hospice of New Mexico. HHS is clearly better suited to performing these

complex calculations than this Court.

> The Court has only found that 42 C.F.R. § 418.309(b)(1) is invalid and [Hospice] would be better off under a fractional calculation as required by the statute. The Court was only asked by the PRRB to review the validity of the regulation. Having accomplished this task, the Court is confident that the agency will be able to determine whether Hospice . . . is entitled to a monetary award, and if so, the amount of that award. Therefore, the Court denies [Hospice's] request that HHS return to Hospice . . ., with interest, all monies Hospice . . . has paid toward the 2006 and 2007 repayment demands. However, HHS must recalculate [Hospice's] reimbursement caps for fiscal years 2006 and 2007 using a fractional method of calculation as required by the statute and return any monies overpaid to HHS by Hospice . . . for these years. Conversely, if under the recalculated reimbursement caps, Hospice . . . is found to have exceeded its annual cap for either of these years and to still owe money to HHS beyond what it has already repaid, then HHS may issue a modified repayment demand.

*Hospice of New Mexico*, 691 F. Supp.2d at 1294.

Hospice moved to alter or amend the judgment requesting a return of all monies HHS previously collected from Hospice, with interest, prior to HHS recalculating Hospice's annual caps for 2006 and 2007. The motion was denied. The court explained its jurisdiction was limited (by 42 U.S.C. § 1395oo(f)) to deciding the validity of 42 C.F.R. § 418.309(b)(1). Under § 1395oo(f)(2) when a "provider seeks judicial review pursuant to paragraph (1), the *amount in controversy* shall be subject to annual interest . . ., to be awarded by the reviewing court to the prevailing party." (emphasis added). The court concluded the amount in controversy was Hospice's *overpayments*, not something more. Since Hospice would still be required to pay any amounts above a properly calculated cap, the "amount in controversy" could not be determined until any overpayments have been determined according to the statute. If Hospice has made

- 6 -

overpayments, it would be entitled to interest on any monies overpaid. The district court also noted that, because the interest accumulates, HHS had an incentive to conform its conduct to the court's order.

## II.    DISCUSSION

Because we grant HHS's motion to withdraw its appeal, we are left to decide only Hospice's cross-appeal.[2] Hospice argues the court exceeded its authority under the APA by requiring HHS to recalculate Hospice's annual cap in accordance with the statute. Specifically, it asserts that once the district court declared the regulation invalid, it was required to set aside the regulation and order HHS to return any monies, with interest, paid pursuant to the illegal demand. In other words, Hospice argues HHS must rescind the current regulation, properly promulgate a new regulation, calculate overpayments to Hospice under an enforceable regulation and then make a demand for payment; all before

---

[2] HHS claims we need not reach the merits of Hospice's cross-appeal because the order remanding to the agency is not a final order under 28 U.S.C. § 1291. We have jurisdiction "of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "In considering whether the judgment constitutes a 'final decision' under § 1291, the label used to describe the judicial demand is not controlling [], we must analyze the substance of the district court's decision, not its label or form." *Graham v. Hartford Life & Accident Ins. Co.,* 501 F.3d 1153, 1157 (10th Cir. 2007) (quotations and citation omitted). "A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Rekstad v. First Bank Sys.*, 238 F.3d 1259, 1261 (10th Cir. 2001) (quotations omitted). "In the administrative context, a remand order is 'generally considered a nonfinal decision . . . not subject to immediate review in the court of appeals.'" *Id.* (quoting *Baca-Prieto v. Guigni*, 95 F. 3d 1006, 1008 (10th Cir. 1996)). However, "[t]he decision should be made on a case-by-case basis applying well-settled principles governing 'final decisions.'" *Id*. at 1263. In this instance, the district court clearly decided the merits of the case and determined the contours of the payment calculations. Once HHS makes these calculations, Hospice can appeal any dispute to the PRRB. Therefore, the district court's decision left no more for the court to do and was final.

it can collect (or retain) any payments for 2006 or 2007.

Hospice contends the district court's order "places the district court in the improper position of dictating next steps by the agency." (Hospice Br. at 50.) In support of this argument it cites to one inapposite case from another circuit. *See Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989). In *Harmon*, the court considered whether an injunction precluding drug testing of employees should include or exclude certain employee classifications. The court stated, "[c]ourts ordinarily do not attempt, even with the assistance of agency counsel, to fashion a valid regulation from the remnants of the old rule." (*Id*. at 494). In this case, the court merely interpreted the regulation as contrary to the plain meaning of the statute. It made no attempt "to fashion a valid regulation." In fact, *Harmon* specifically observed, "[w]hen a court finds that an agency regulation is invalid in substantial part, and that the invalid portion cannot be severed from the rest of the rule, its typical response is to vacate the rule and remand to the agency." *Id*. That is the precise action taken by the district court in this instance.

Hospice also claims the district court's order allows HHS to recalculate its annual cap before HHS properly adopts a regulation formed to the statute. That, Hospice claims, denies it due process and violates the Medicare Act and the APA and will allow a cap payment demand without a "final determination." [3] (Hospice Br. at 51.)

The district court correctly rejected these arguments. "The fundamental

---

[3] That concern is highly unlikely. On May 9, 2011, HHS published proposed revisions to the hospice cap regulation and is in the process of receiving public comment. *See* 76 Fed. Reg. 26806, 26810-12, 26814-17.

requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). The 2006 and 2007 demands (albeit unlawful) included a notice of a final determination, Hospice objected and appealed. The district court determined the merits of Hospice's objection in its favor and remanded to the agency for recalculation, as there was no definitive amount in controversy upon which interest could be computed. The recalculated amounts will be subject to the same adequate procedures. In any event, Hospice will be entitled to the return of any overpayments with interest.

Hospice's most developed argument rests on public policy. Hospice contends "to allow HHS to retain money collected unlawfully" removes any "deterrent against HHS issuing demands it knows are unlawful." (Hospice Br. at 52.) Hospice points to the fact both the 2006 and 2007 demands were made after another district court had held the regulation invalid. *See Sojourn Care v. Leavitt*, No. 07 cv 375 (N.D. Okla. Feb.13, 2008).

After testing the water, HHS has capitulated on the plain meaning of 42 U.S.C. § 1395f(i)(2). We trust its rule making will reflect those concessions. Despite Hospice's discourse, we are not willing to attribute bad faith to HHS. The district court did not abuse its discretion for failing to impose what amounts to punitive sanctions against HHS. Hospice agrees it will, in any event, be required to repay some amount under the statute and a valid implementing regulation. Indeed, Hospice's own recalculation of its annual cap under the statute suggested it would owe approximately $200,000 more for 2006 than the amount it paid. Moreover, HHS has the right to appeal from a district court

decision with which it disagrees and it capitulated promptly once two circuits agreed its regulation was invalid.

"Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002). The court clearly and cogently explained why it could not determine the "amount in controversy" under the relevant statute without a remand and ordered HHS to make the factual findings for recalculation in accord with 42 U.S.C. § 1395f(i)(2). In these circumstances, it is appropriate to remand the matter to the agency.

Our conclusion also finds support in *Lion Health Services*. In that case, the district court ordered HHS to refund all payments from Lion to HHS under the invalid cap calculations. However, the Fifth Circuit reversed, concluding the relief "was broader and more burdensome than necessary to afford Lion full relief" and was, therefore, an abuse of discretion. *Lion Health Servs.,* 635 F.3d at 704. It reasoned:

> Even using Lion's proportional calculation method, it still owes a substantial amount of refund to the Secretary for FY06 and FY07. Additionally, the determination of the amount of refund owed to Lion is a matter properly within the agency's authority. Therefore, the district court's decision to order a full refund rather than remanding for recalculation of the refund amount was an abuse of discretion.

*Id*. at 703-04. Similarly here, the district court's order provides Hospice with full relief noting, "[T]he prevailing party is entitled to recover interest only on the monies to which it is ultimately entitled." (R. Vol. 3 at 677) (emphasis added). And that is precisely what

Hospice will receive.

AFFIRMED.

<p style="margin-left: 45%">**Entered by the Court:**</p>

<p style="margin-left: 45%">**Terrence L. O'Brien**<br>United States Circuit Judge</p>