# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-10334

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2020

Lyle W. Cayce
Clerk

HENDRICK MEDICAL CENTER,

     Plaintiff - Appellant

v.

ALEX M. AZAR, II, SECRETARY, U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

     Defendant – Appellee

Appeal from the United States District Court
Northern District of Texas

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Healthcare provider Hendrick Medical Center ("Hendrick") brought this suit challenging Medicare payments it received for the 2015 federal fiscal year. After the review board dismissed its appeal, Hendrick appealed to the district court which rendered summary judgment in favor of Appellee Alex M. Azar, II, Secretary ("the Secretary") of the U.S. Department of Health & Human Services ("DHHS"). For the following reasons, we AFFIRM.

## I. Facts & Procedural History

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act") and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Secretary is the federal official responsible

No. 19-10334

for administration of the Medicare program. 42 U.S.C. § 1395hh(a)(1). The Secretary delegates this responsibility to the Centers for Medicare & Medicaid Services ("CMS"), a federal agency located within the DHHS. *Id.* at § 1395b-9. CMS contracts with Medicare Administrative Contractors ("MAC") to perform services necessary for the daily operation of the Medicare program. *Id.* at § 1395kk-1. Each hospital is assigned to a MAC that collects wage data from the hospital and submits it to CMS for calculation of a "wage index." *See* 42 U.S.C. § 1395ww(d)(3)(E)(i).

In simplified terms, the wage index is a ratio of each geographical area's labor cost to the national average. *Id.* The wage index is used to calculate the payments that each hospital will receive for treating Medicare patients—the higher the wage index, the higher the payment. *Id.* Any adjustments to the wage index must be budget neutral, meaning that an increase in payment to one provider requires an offsetting decreased payment to another provider. *Id.* CMS updates the wage index once a year. *Id.*

The wage index is calculated using the wage data correction process. The wage data correction process involves publication of a "timetable" containing a list of important dates during that Federal Fiscal Year ("FFY"), including two separate notices in the Federal Register—(1) a proposed rule in April or May and (2) a final rule in August. The timetable references public use files ("PUFs") which are compiled by CMS and made available online to hospitals on certain dates. The hospitals are then instructed to review the data and request any necessary corrections by specified deadlines. Hospitals are given several opportunities to request corrections throughout the process, but their last chance is in June. If hospitals do not request revisions of the proposed rule that is published in April or May by the June deadline, the proposed rule

No. 19-10334

becomes final and is published in the Federal Register in August, setting the wage index for the next FFY beginning on October 1.

Hendrick operates under the Medicare program and is located in the Abilene, Texas geographical area. In this case, Hendrick challenges the wage index applied to it during the 2015 FFY.[1] It is undisputed that the wage index data applicable to Hendrick was incorrect because the MAC—here, Novitas Solutions, Inc.—transmitted Hendrick's final wage data to CMS and the data contained errors. In the earlier stages of the wage data correction process, Hendrick noticed errors and successfully utilized the correction process to correct them. However, once that data was corrected, the MAC then erroneously provided CMS with the original uncorrected wage data, and that data was used to calculate the Abilene wage area index. To compound the problem, although the incorrect wage index was posted publicly for notice and correction as provided by the wage data correction process, Hendrick never reviewed the data or requested to correct it by the June 2, 2014 deadline. Because Hendrick missed the final deadline to request corrections to the data, the incorrect wage index became the final wage index that was set and subsequently published in the Federal Register in August 2014. To further complicate matters, Hendrick's wage data is utilized to calculate the wage index for the entire geographical area of Abilene, Texas, where a separate group of hospitals—Anson General Hospital, ContinueCare Hospital, Stamford Memorial Hospital, and Southern Oaks Healthcare, Inc. (collectively, "the Hospitals")—is located. Consequently, Hendrick's incorrect wage index skewed the wage index applicable to both Hendrick and the Hospitals, resulting in an incorrect calculation of the wage index applicable to all. As a consequence,

---

[1] The 2015 FFY begins October 1, 2014 and ends September 30, 2015.

3

No. 19-10334

Hendrick and the Hospitals received lowered Medicare reimbursements for the 2015 FFY.[2]

Hendrick appealed to the Provider Reimbursement Review Board ("the Board")[3] seeking an additional $2 million for hospital inpatient services furnished to Medicare beneficiaries in the 2015 FFY. The Board dismissed Hendrick's appeal for lack of jurisdiction because Hendrick had failed to adhere to the statutory process for the correction of wage data by requesting correction of the incorrect data by the June 2014 deadline. Specifically, the Board stated:

> The Board concludes that it lacks jurisdiction over Hendrick Medical Center because it failed to exhaust its administrative remedies when it failed to check the May 2, 2014 PUF which contained the incorrect wage data for FFY 2015. Although the Provider argues that it lacked notice of the issuance of the PUF, the Secretary advised providers to review the file in the May 15, 2014 Federal Register.

Hendrick appealed the Board's ruling to the district court. On March 7, 2019, the district court granted summary judgment in favor of the Secretary, holding that the jurisdictional decision of the Board and subsequent reconsideration denial did not violate the APA or the Medicare Act. The district court explained that it was "undisputed that [Hendrick] failed to check its data in the final public use file and failed to notice that its wage data included a transmission error . . . [and] also failed to request a wage data correction by the June 2, 2014 deadline." The district court further observed that despite Hendrick's argument to the contrary, "the exhaustion requirement was a duly-promulgated rule . . . designed . . . specifically to address the issue [Hendrick] alleges caused the error—CMS or MAC errors made in the entry of the final

---

[2] The Hospitals have a separate, related appeal currently pending before this court. *See* No. 19-10470, *Anson Gen. Hosp., et al v. Azar*.

[3] The Provider Reimbursement Review Board is a regulatory body authorized to make substantive decisions regarding Medicare reimbursement appeals.

wage index data that resulted from the correction process. *See* 79 Fed. Reg. at 28,081." The district court concluded that the "results may be harsh, but the deadline for administrative exhaustion was clearly set forth and properly noticed." This appeal ensued.

## II. Standard of Review

We review a district court's grant of a summary judgment de novo, applying the same standard as the district court. *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 227 (5th Cir. 2019). "Under Rule 56, summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted) (quoting FED. R. CIV. P. 56(a)).

Hendrick filed suit under 42 U.S.C. § 1395oo(f), which states that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." Section 1395oo(f)(1) uses the standards for judicial review established in the APA. *Id.* ("Such action shall be brought in the district court of the United States for the judicial district in which the provider is located . . . and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title."). "Under the APA, the [agency's] action may be set aside if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See Tex. Tech. Physicians Assocs. v. U.S. Dep't of Health & Human Servs.*, 917 F.3d 837, 844 (5th Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)). However, we defer to an agency's decision and presume it to be valid. *Id.* "[T]he plaintiff bears the

No. 19-10334

burden of showing otherwise." *Id.* Additionally, "[w]e defer to the agency's findings of fact if they are supported by substantial evidence." *Id.*

### III. Discussion

Hendrick appeals to this court arguing that under the Medicare Act and the APA the Secretary may not make Medicare payments based on incorrect information, regardless of its failure to adhere to the administrative process used to correct inaccurate data under the statute. Hendrick advances numerous arguments against the exhaustion requirements the Board relied on in determining that it lacked jurisdiction over Hendrick's appeal. It also submits policy, notice, and statutory construction arguments and requests that this court require the Secretary to recalculate its 2015 FFY Medicare payments if we determine that the Board had jurisdiction over its appeal. Our review of the applicable statutory and case law reveals that Hendrick is not entitled to the relief that it seeks.

In 1965, Congress established the Medicare Act "and authorized the Secretary to issue regulations defining the reimbursable costs and to otherwise carry out the Medicare Act provisions." *See Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 695 (5th Cir. 2011) (citing 42 U.S.C. §§ 1395x(v)(1)(A) & 1395hh(a)(1)). "[T]he statutory text [of the Medicare Act] expressly affords the Secretary flexibility and discretion in compiling data and calculating the wage index." *Anna Jacques Hosp. v. Burwell*, 797 F.3d 1155, 1164 (D.C. Cir. 2015). Section 1395oo(a) describes the Secretary's authority (acting through CMS) to require reports from hospitals desiring to challenge their assigned wage index and to set deadlines for the submission of those reports. In turn, the notice set forth in 79 Fed. Reg. 27978, 28081 (May 15, 2014), provided that the May 2014 PUFs were made available online "solely for the limited purpose of identifying any potential errors made by CMS or the MAC in the entry of the final wage

6

index data." The notice made clear that "[a]fter the release of the May 2014 wage index data files, changes to the wage and occupational mix data *will only be made in those very limited situations involving an error by the MAC or CMS that the hospital could not have known about before its review of the final wage index data files.*" 79 Fed. Reg. 27978, 28081 (May 15, 2014). (emphasis added). The notice states that "[i]f, after reviewing the May 2014 final public use files, a hospital believes that its wage or occupational mix data are incorrect due to a MAC or CMS error in the entry or tabulation of the final data, the hospital should notify both its MAC and CMS regarding why the hospital believes an error exists and provide all supporting information, including relevant dates (for example, when it first became aware of the error). *The hospital is required to send its request to CMS and to the MAC no later than June 2, 2014.*" *See id.* (emphasis added). This notice was clear and in no uncertain terms placed the onus on Hendrick to review and request any corrections of its wage data by June 2, 2014—which it did not.

Providers such as Hendrick are deemed to have notice of the contents of the Federal Register. *See* 44 U.S.C. § 1507 (stating that notice by publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). Moreover, although exact dates for the 2015 FFY deadlines were provided in the Federal Register in 2014, the original wage data correction process timetable with the same relevant deadlines has been published every year since 1997. *See* Final Rule, 62 Fed. Reg. 45966, 45993 (Aug. 29, 1997) (providing the early June final deadline for correction of wage data, publication of the final rule in August, and the effective date of the updated wage index in October).

Additionally, 42 C.F.R. § 412.64(k)(1)-(2) further underscores a provider's duty to exhaust its administrative remedies by availing itself of the

wage data correction process prior to obtaining review from the Board. Subsection 412.64(k)(1) states that a hospital may obtain a "midyear" correction of a wage index "only if a hospital can show that—(i) [t]he [MAC] or CMS made an error in tabulating its data; and (ii) [t]he hospital could not have known about the error, or did not have the opportunity to correct the error, before the beginning of the Federal fiscal year." Subsection 412.64(k)(2) has similar limiting language in that it only allows retroactive changes to the wage index when CMS determines that "the hospital knew about the error in its wage data and requested the fiscal intermediary and CMS to correct the error both within the established schedule for requesting corrections to the wage data . . . and using the established process[.]"

Under this court's deferential standard of judicial review applicable here, the agency's action cannot be set aside unless we find it "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Tex. Tech. Physicians Assocs.*, 917 F.3d at 844 (internal quotation marks omitted). The agency's action here, however, was supported by the statute and regulations. Hendrick received notice via the Federal Register but failed to request correction of its wage data by the published deadline in accordance with the established process under the statute. Thus, the Board's determination that it did not have jurisdiction over Hendrick's appeal for failure to exhaust administrative remedies was correct. As the district court correctly observed, the "results may be harsh, but the deadline for administrative exhaustion was clearly set forth and properly noticed."[4] The district court did not err in dismissing Hendrick's appeal.

---

[4] *See also Baystate Franklin Med. Ctr. v. Azar*, --- F.3d ---, No. 18-5264, 2020 WL 625214, at *7 (D.C. Cir. Feb. 11, 2020) (holding that the Secretary's decision to enforce a deadline and reject data submitted by a hospital months after the deadline to request revisions had passed was within his statutory discretion and a permissible construction of the statute).

No. 19-10334

## IV. Conclusion

For these reasons, we affirm the district court's summary judgment in favor of the Secretary.