# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2020

No. 19-10470

Lyle W. Cayce
Clerk

ANSON GENERAL HOSPITAL; CONTINUE CARE HOSPITAL AT
HENDRICK MEDICAL CENTER; STAMFORD MEMORIAL HOSPITAL;
SOUTHERN OAKS HEALTHCARE, INCORPORATED, doing business as
Wisteria Place,

> Plaintiffs - Appellants

v.

ALEX M. AZAR, II, SECRETARY, U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:18-CV-11

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

Healthcare providers, Anson General Hospital, ContinueCare Hospital, Stamford Memorial Hospital, and Southern Oaks Healthcare, Inc. (collectively, "the Hospitals"), brought this suit challenging the wage index applied to their geographical area for the 2015 federal fiscal year. After the review board dismissed their appeal, the Hospitals appealed to the district court which

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10470

rendered summary judgment in favor of Appellee Alex M. Azar, II, Secretary ("the Secretary") of the U.S. Department of Health & Human Services ("DHHS"). For the following reasons, we AFFIRM.

## I. Facts & Procedural History

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act") and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Secretary is the federal official responsible for administration of the Medicare program. 42 U.S.C. § 1395hh(a)(1). It delegates this responsibility to the Centers for Medicare & Medicaid Services ("CMS"), a federal agency located within the DHHS. *Id.* at §1395b-9. CMS contracts with Medicare Administrative Contractors ("MAC") to perform services necessary for the daily operation of the Medicare program. *Id.* at § 1395kk-1. Each hospital is assigned to a MAC that collects wage data from the hospital and submits it to CMS for calculation of a "wage index." *See* 42 U.S.C. § 1395ww(d)(3)(E)(i).

The wage index is a ratio of each geographical area's labor cost to the national average. *Id.* It is used to calculate the payments that each hospital will receive for treating Medicare patients—the higher the wage index, the higher the payment. *Id.* Any adjustments to the wage index must be budget neutral, meaning that an increase in payment to one provider requires an offsetting decreased payment to another provider. *Id.* CMS updates the wage index once a year. *Id.*

The wage index is calculated using the wage data correction process. This process involves publication of a "timetable" containing a list of important dates during that Federal Fiscal Year ("FFY"), including two separate notices in the Federal Register—(1) a proposed rule in April or May and (2) a final rule in August. The timetable references public use files ("PUFs") that are compiled

No. 19-10470

by CMS and made available online to healthcare providers on certain dates. The providers are then instructed to review the data and request any necessary corrections by specified deadlines. They are given several opportunities to request corrections throughout the process, but their last chance is in June. If they do not request revisions of the proposed rule that is published in April or May by the June deadline, the proposed rule becomes final and is published in the Federal Register in August, setting the wage index for the next FFY beginning on October 1.

The Hospitals operate under the Medicare program and are located in the Abilene, Texas geographical area. Hendrick Medical Center ("Hendrick") is another healthcare provider in Abilene, and its wage data is utilized to calculate the wage index for the geographical area where the Hospitals are located. In this case, the Hospitals challenge the wage index applied to Hendrick, and consequently to them, during the 2015 FFY[1]. It is undisputed that the wage index data applicable to Hendrick was incorrect because the MAC—here, Novitas Solutions, Inc.—transmitted Hendrick's final wage data to CMS and the data contained errors. In the earlier stages of the wage data correction process, Hendrick noticed errors and successfully utilized the correction process to correct them. However, once that data was corrected, the MAC then erroneously provided CMS with the original uncorrected wage data, and that data was used to calculate the Abilene wage area index. Although the incorrect wage index was posted publicly for notice and correction as provided by the wage data correction process, Hendrick never reviewed the data or requested to correct it by the June 2, 2014 deadline. Because Hendrick missed the final deadline to request corrections to the data, the incorrect wage index became the final wage index that was set and subsequently published in the

---

[1] The 2015 FFY begins October 1, 2014 and ends September 30, 2015.

No. 19-10470

Federal Register in August 2014. Consequently, Hendrick's incorrect wage index skewed the wage index applicable to both Hendrick and the Hospitals, resulting in an incorrect calculation of the wage index applicable to all. As a consequence, Hendrick and the Hospitals received lowered Medicare reimbursements for the 2015 FFY.

Hendrick appealed to the Provider Reimbursement Review Board ("the Board")[2] first, seeking an additional $2 million for hospital inpatient services furnished to Medicare beneficiaries in the 2015 FFY. The Board dismissed Hendrick's appeal for lack of jurisdiction for failure to exhaust administrative remedies because Hendrick had failed to adhere to the statutory process for the correction of wage data by requesting correction of the incorrect data by the June 2014 deadline.

The Hospitals separately appealed to the Board and their appeal was also dismissed. The Board explained that it had jurisdiction over the matter, but it did not have the authority to review or change the published rates for the Abilene geographical area or "decide the legal question of whether the Secretary incorrectly assigned a low [Inpatient Prospective Payment System] wage index rate to the Abilene, Texas [Core-Based Statistical Area] for FFY 2015." The Board allowed expedited judicial review of the Hospitals' appeal, permitting their immediate appeal to the district court.

Hendrick appealed the Board's ruling to the district court first and on March 7, 2019, the district court granted summary judgment in favor of the Secretary, holding that the jurisdictional decision of the Board and subsequent reconsideration denial did not violate the APA or the Medicare Act. The district

---

[2] The Provider Reimbursement Review Board is a regulatory body authorized to make substantive decisions regarding Medicare reimbursement appeals.

4

court observed that the "results may be harsh, but the deadline for administrative exhaustion was clearly set forth and properly noticed."

The district court then adjudicated the Hospitals' appeal, again granting summary judgment in favor of the Secretary on grounds that its calculation of the 2015 wage index was consistent with the statute, supported by substantial evidence, and reasonable. The district court further determined that nothing in the statute or the Secretary's regulations allowed the Hospitals to challenge another provider's (Hendrick's) wage index data outside of the Secretary's established wage data correction process. The Hospitals filed this appeal.[3]

## II. Standard of Review

We review a district court's grant of a summary judgment de novo, applying the same standard as the district court. *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 227 (5th Cir. 2019). "Under Rule 56, summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted) (quoting FED. R. CIV. P. 56(a)).

The Hospitals filed suit under 42 U.S.C. § 1395oo(f), which states that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." Section 1395oo(f)(1) uses the standards for judicial review established in the APA. *Id.* ("Such action shall be brought in the district court of the United States for the judicial district in which the provider is located . . . and shall be tried pursuant to the applicable provisions under

---

[3] Hendrick's separate, related appeal is currently pending before this court. *See* No. 19-10334, *Hendrick Med. Ctr. v. Azar.*

chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title."). "Under the APA, the [agency's] action may be set aside if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See Tex. Tech. Physicians Assocs. v. U.S. Dep't of Health & Human Servs.*, 917 F.3d 837, 844 (5th Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)). However, we defer to an agency's decision and presume it to be valid. *Id.* "[T]he plaintiff bears the burden of showing otherwise." *Id.*

### III. Discussion

The Hospitals assert numerous arguments on appeal. These include that (1) the Hospitals have a statutory right to appeal Medicare underpayments resulting from an improperly low wage index; (2) the MAC acted arbitrarily and capriciously by failing to give Hendrick and the Hospitals notice of its negligent change to Hendrick's correct wage data; (3) the 2015 FFY Abilene wage area index violates the Medicare Act, is arbitrary and capricious, is not based on substantial evidence, and must be set aside; (4) the Secretary has never previously denied wage index relief where a provider has successfully used the wage data correction process to correct its wage data; and (5) Hendrick should have been permitted to make a midyear correction to its wage index under 42 C.F.R. § 412.64(k). Additionally, the Hospitals argue that they could not have identified the errors in Hendrick's wage data by examining the May 2 PUF because providers generally have no way of knowing another provider's correct wage data. As we held in Hendrick's appeal, our review of the applicable statutory and case law reveals that the Hospitals are not entitled to the relief that they seek.

In 1965, Congress established the Medicare Act and "authorized the Secretary to issue regulations defining the reimbursable costs and to otherwise carry out the Medicare Act provisions." *See Lion Health Servs., Inc. v. Sebelius*,

No. 19-10470

635 F.3d 693, 695 (5th Cir. 2011) (citing 42 U.S.C. §§ 1395x(v)(1)(A) & 1395hh(a)(1)). "[T]he statutory text [of the Medicare Act] expressly affords the Secretary flexibility and discretion in compiling data and calculating the wage index." *Anna Jacques Hosp. v. Burwell*, 797 F.3d 1155, 1164 (D.C. Cir. 2015). Section 1395oo(a) describes the Secretary's authority (acting through CMS) to require reports from hospitals desiring to challenge their assigned wage index and to set deadlines for the submission of those reports. In turn, the notice set forth in 79 Fed. Reg. 27978, 28081 (May 15, 2014), provided that the May 2014 PUFs were made available online "solely for the limited purpose of identifying any potential errors made by CMS or the MAC in the entry of the final wage index data." The notice made clear that "[a]fter the release of the May 2014 wage index data files, changes to the wage and occupational mix data *will only be made in those very limited situations involving an error by the MAC or CMS that the hospital could not have known about before its review of the final wage index data files*." 79 Fed. Reg. 27978, 28081 (May 15, 2014) (emphasis added). The notice states that "[i]f, after reviewing the May 2014 final public use files, a hospital believes that its wage or occupational mix data are incorrect due to a MAC or CMS error in the entry or tabulation of the final data, the hospital should notify both its MAC and CMS regarding why the hospital believes an error exists and provide all supporting information, including relevant dates (for example, when it first became aware of the error). *The hospital is required to send its request to CMS and to the MAC no later than June 2, 2014.*" *See id.* (emphasis added). This notice was clear[4] and in no uncertain terms placed the onus on Hendrick to review and request any corrections of its wage data by

---

[4] Providers such as Hendrick are deemed to have notice of the contents of the Federal Register. *See* 44 U.S.C. § 1507 (stating that notice by publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it").

June 2, 2014—which it did not.[5] The Board's determination that it did not have jurisdiction over Hendrick's appeal for failure to exhaust administrative remedies was correct.

Although it is indisputable that the Hospitals were adversely affected by the negligence of Hendrick, the statute simply does not provide relief in this context. The D.C. Circuit Court explained the parameters of the statute in *Anna Jacques Hospital v. Burwell*:

> *The text of the Medicare Act largely leaves the process of defining geographic boundaries and computing the wage index to the Secretary's reasoned judgment.* The Act requires the Secretary to adjust the standard prospective payment rate by "a factor (established by the Secretary)" that "reflect[s]" the relative wage level "in the geographic area of the hospital compared to the national average hospital wage level." 42 U.S.C. § 1395ww(d)(3)(E)(i). The statute provides some general guidance as to how the Secretary must calculate the wage "factor," by requiring that the wage index be updated at least annually "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of [participating] hospitals in the United States." *Id.* In addition, any adjustment "shall be made in a manner that assures that the aggregate payments * * * are not greater or less than those that would have been made in the year without the adjustment." *Id.*
>
> *That is it. On all other aspects of the wage-index calculation, the statute is silent . . . The statute "merely requires the Secretary to develop a mechanism to remove the effects of*

---

[5] Although exact dates for the 2015 FFY deadlines were provided in the Federal Register in 2014, the original wage data correction process timetable with the same relevant deadlines has been published every year since 1997. *See* Final Rule, 62 Fed. Reg. 45966, 45993 (Aug. 29, 1997) (providing the early June final deadline for correction of wage data, publication of the final rule in August, and the effective date of the updated wage index in October).

*local wage differences"; it "does not specify how the Secretary should construct the index" and, in fact, "Congress through its silence delegated these decisions to the Secretary."* [*Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1230 (D.C. Cir. 1994).]

797 F.3d at 1164 (emphasis added). In other words, there is no statutory support for the notion that one healthcare provider can challenge another healthcare provider's wage index data outside of the established wage data correction process. Under the statute, the Secretary "is not required to calculate the wage index with scientific 'exactitude,'" *Anna Jacques Hosp.*, 797 F.3d at 1165 (citation omitted), and may "sacrifice complete accuracy for administrative simplicity." *Id.* at 1161 (citation omitted). As the Secretary recognizes on appeal, "updating the wage index is a complex, time-sensitive process" and it would be impossible for it "to timely complete the wage index each year, or administer it thereafter, if every provider had the right to cross-challenge every other provider's wage data (and to do so belatedly)." The district court did not err in dismissing the Hospitals' appeal. *See Forrest Gen. Hosp.*, 926 F.3d at 227.

## IV. Conclusion

For these reasons, we affirm the district court's summary judgment in favor of the Secretary.